OPINION
{¶ 1} Following a jury trial, defendant-appellant Kaliya Daniels was convicted of one count of Assault upon an Employee of a Local Correctional Facility, in violation of R.C. 2903.13(A), a felony of the fifth degree, and two counts of Assault upon a Police Officer, in violation of R.C. 2903.13(A), felonies of the fourth degree. All of the offenses occurred while Daniels was incarcerated in the Greene County Jail, during a routine pat-down *Page 2 
procedure. Daniels was sentenced to imprisonment for 12 months on the first count, and to imprisonment for 18 months on the second and third counts, to be served consecutively, for an aggregate sentence of 48 months. From his conviction and sentence, Daniels appeals.
 {¶ 2} Daniels's assigned counsel has filed a brief under Anders v.California (1967), 368 U.S. 738, indicating that he could find no potential assignments of error having arguable merit. We accorded Daniels sixty days within which to file his own, pro se brief. He has not done so.
 {¶ 3} Daniels's assigned counsel has identified three potential assignments of error, concluding that none of them has arguable merit. The first potential assignment of error, and a portion of the second, concern one of the jurors, juror number one, who served on the jury despite having known one of the alleged victims. The first potential assignment of error is the trial court's having left the juror on the jury after discovering, during the trial, the circumstances, and the second potential assignment of error asserts the ineffective assistance of trial counsel in having failed to seek the removal of this juror from the jury at that time.
 {¶ 4} The record reflects the following colloquy concerning juror number one, which occurred during the trial:
 {¶ 5} "BAILIFF: Your Honor, Jury [sic] Number One just informed me that he personally knows Officer Gannon [one of the three alleged assault victims]. I didn't know if that was going to make any difference or not, but I thought I would let you know.
 {¶ 6} "THE COURT: I guess really, let's see, Gannon was one I think I mentioned this morning. *Page 3 
 {¶ 7} "MR. HUNTER [representing the State]: It was. What we might want to do is bring him in and voir dire him and —
 {¶ 8} "THE COURT: I think we'll do that and see if he — as long as he has no problem —
 {¶ 9} "MR. HUNTER: Right.
 {¶ 10} "THE COURT: I don't see any problem. If he does, we've got an alternate, we can always substitute.
 {¶ 11} "MR. COATES [representing Daniels]: Just to let you know, I was aware because when he came in he did say hello to him while he was sitting out here waiting to testify when they were waiting outside here, so —
 {¶ 12} "THE COURT: All right. Well, at 2:30 we'll bring him in and not involve the other Jurors. We'll just bring him in by himself without the other Jurors present and we'll just make that inquiry at that point.
 {¶ 13} "MR. HUNTER: Thank you, Your honor.
 {¶ 14} ". . . .
 {¶ 15} "(WHEREUPON, a recess was taken. At 2:13 p.m., Juror Number 1 entered the Courtroom, without the presence of the other Jurors and proceedings were held as follows:)
 {¶ 16} "* * * .
 {¶ 17} "THE COURT: You may be seated. Hi. You can stand right up here or sit up here if you would like. Just one place or another. We just want to ask you a couple questions. I guess you indicated you knew someone or —
 {¶ 18} "JUROR NUMBER 1: Gannon, I didn't know that he was going to be one of *Page 4 
the officers here, but —
 {¶ 19} "THE COURT: You happen to know Officer Gannon who testified?
 {¶ 20} "JUROR NUMBER 1: Correct.
 {¶ 21} "THE COURT: Okay. Let the record indicate that we're having this discussion with Juror Number 1, [name of juror], out of the presence of the other Jurors but in the presence of counsel and the Defendant.
 {¶ 22} "The fact that you know Officer Gannon, would that in any way effect [sic] your ability to be fair and impartial in this particular case?
 {¶ 23} "JUROR NUMBER 1: To be honest about it, I don't think so.
 {¶ 24} "THE COURT: Do you feel you could be fair to the Defendant as well as to the Plaintiff even though —
 {¶ 25} "JUROR NUMBER 1: (Nodded in the affirmative.)
 {¶ 26} "THE COURT: How do you happen to know him?
 {¶ 27} "JUROR NUMBER 1: His mother-in-law is Bev Matthews and I sell her cars all the time, and so Tom would come with her.
 {¶ 28} "THE COURT: She's actually a customer of your's [sic]?
 {¶ 29} "JUROR NUMBER 1: That's correct.
 {¶ 30} "THE COURT: That's how you know them? They're not personal family relationships, or anything like that?
 {¶ 31} "JUROR NUMBER 1: Right.
 {¶ 32} "THE COURT: They're actually business relationship customers?
 {¶ 33} "JUROR NUMBER 1: Correct.
 {¶ 34} "THE COURT: All right. I don't see any problem, counsel. Do either of *Page 5 
you have any questions?
 {¶ 35} "MR. HUNTER: I don't, Your Honor.
 {¶ 36} "MR. COATES: Just, again, how long have you — how long would you say, if you can guess, how long have you known Mr. Gannon?
 {¶ 37} "JUROR NUMBER 1: I would say probably nine years.
 {¶ 38} "MR. COATES: Okay. And you don't think that is going to — would that have any effect on your ability to determine what has been said here of the witnesses' testimony?
 {¶ 39} "JUROR NUMBER 1: No, sir, I don't.
 {¶ 40} "THE COURT: Okay. All right. Thank you. All right. I have no problems. Any objection by either counsel? That is fine. Thank you very much.
 {¶ 41} "As a matter of fact, you can wait right here. I think she's going to go get the rest of the Jury.
 {¶ 42} "MR. COATES: Your Honor, would you just advise him before they come in just not to discuss what we've just done?
 {¶ 43} "THE COURT: Yes. Don't discuss anything that we've talked about in here with the other members of the Jury.
 {¶ 44} "JUROR NUMBER 1: No problem.
 {¶ 45} "MR. COATES: Thank you.
 {¶ 46} "THE COURT: And I do appreciate your candor."
 {¶ 47} At this point, the rest of the jury entered the courtroom, and the trial proceeded.
 {¶ 48} We agree with Daniels's appellate counsel that this incident does not *Page 6 
furnish the basis for an assignment of error having arguable merit. In view of the juror's responses to the questions, there does not appear to have been any basis to have removed him for cause. Furthermore, trial counsel must be allowed wide latitude in making decisions of trial strategy. We were not present at the trial. Daniels's trial counsel was, and may have gained a favorable impression of this juror, as being potentially favorable to the defense, based on observations of the juror.
 {¶ 49} Besides the issue of the juror, the second potential assignment of error identified by Daniels's appellate counsel is trial counsel's ineffectiveness for having "failed to produce a video tape in Appellant's defense, [and for having] failed to subpoena Deputy Walton but then [having] requested that he speak during the sentencing." As the State notes in its brief, there is no evidence in the record that a videotape of the alleged assaults exists, let alone that it would have been helpful to Daniels.
 {¶ 50} As far as Deputy Walton is concerned, the only reference in the record to him appears to be Daniels's statement at his sentencing that:
 {¶ 51} "Every one of these gentlemen before you can tell you I'm a very respectful man. There is only one person that is sitting out, and that is Mr. Walton. I have been very, very respectful, and I had a sudden outburst when I felt like I didn't have — I wasn't treated in a rightful manner. I didn't know he was going to come here today. I didn't know he was going to be in this Courtroom today, but I send my apologizes [sic] before I came back. Just so happened that he's in the Courtroom today. That is how much of a good man that I am. I'm just in a bad, in a bad situation."
 {¶ 52} In a direct appeal, an appellant must demonstrate error in the record. This *Page 7 
record does not arguably support a contention that Deputy Walton's testimony, had he been called, would have been helpful to Daniels. We agree with Daniels's appellate counsel that there is no arguable merit to this potential assignment of error.
 {¶ 53} The final potential assignment of error identified by Daniels's appellate counsel concerns the weight and sufficiency of the evidence. The only witnesses to testify at the trial were the three alleged victims, Sheriff's deputies Thomas M. Gannon, Glenn E. McKinney, and Daniel J. Schrand. Their testimony, which was not inherently incredible, established that as they were attempting to restrain Daniels, as he charged at another officer, during a routine bi-monthly pat-down procedure at the jail, Daniels punched Gannon several times, bit McKinney on the hand, and elbowed Schrand in the mouth while Schrand was on the ground, resulting in Schrand's suffering a split lip. We agree with Daniels's appellate counsel that there is no arguable merit to a potential assignment of error that his convictions are against the manifest weight of the evidence, or are not supported by sufficient evidence.
 {¶ 54} Anders v. California, supra, requires us to review the record independently, and we have done so. During the course of that review, we noticed that Daniels requested jury instructions on two lesser-included offenses, being Obstruction of Official Business, in violation of R.C. 2921.31(A), and Disorderly Conduct, in violation of R.C. 2917.11(A)(1), but the trial court rejected both requests. Obstruction of Official Business includes an additional element — the intent to hinder a police officer in the performance of the officer's duties — that is not required for the Assault charges. Therefore, it clearly cannot be a lesser-included offense.
 {¶ 55} Disorderly Conduct may, under some circumstances, constitute a lesser-included *Page 8 
offense of the Assault offenses with which Daniels was charged.State v. Reynolds (1985), 25 Ohio App.3d 59, State v. Roberts (1982),7 Ohio App.3d 253. But the jury, in order to have found Daniels not guilty of the Assault offenses, but guilty of Disorderly Conduct, would have had to have found that he was not actually intending to harm the officers, but was reckless in that regard. On this record, we conclude that there is no reasonable argument that can be made that the trial court abused its discretion in concluding that no reasonable finder of fact could have found Daniels not guilty of the Assault offenses, but guilty of Disorderly Conduct.
 {¶ 56} After having reviewed the entire record, we conclude that there are no potential assignments of error having arguable merit, and that this appeal is wholly frivolous. Accordingly, the judgment of the trial court is Affirmed.
 WOLFF, P.J., and DONOVAN, J., concur. *Page 1